UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MILGARD MANUFACTURING, INC., a Washington corporation,

    Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts mutual insurance company,

    Defendant.

CASE NO. C13-6024 BHS

ORDER

This matter comes before the Court on numerous motions from the parties (Dkts. 145, 164, 166, 170, 190, 198, 206, 216).  The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

**I. PROCEDURAL HISTORY**

On November 12, 2013, Plaintiff Milgard Manufacturing, Inc. ("Milgard") filed suit against Defendant Liberty Mutual Insurance Company ("Liberty") in Pierce County Superior Court.  Dkt. 1.  On November 27, 2013, Liberty removed the matter to this

Court. *Id.* On June 5, 2014, Milgard filed an amended complaint. Dkt. 24 ("Comp."). Milgard alleges that Liberty (1) breached its duty to indemnify Milgard, (2) acted in bad faith, and (3) violated the Washington Consumer Protection Act ("CPA") and Insurance Fair Conduct Act ("IFCA"). *Id.* ¶¶ 12–30.

On February 11, 2015, Liberty moved for summary judgment on Milgard's indemnification claims and for declaratory judgment. Dkt. 145. On March 2, 2015, Milgard responded. Dkt. 148. On March 6, 2015, Liberty replied. Dkt. 160.

On March 12, 2015, Liberty moved for partial summary judgment with regard to Milgard's closed underlying claims, Milgard's underlying claims that do not exceed the self-insured retention limit, and Liberty's claims-handling conduct during litigation. Dkt. 164. On March 30, 2015, Milgard responded and moved to strike Liberty's motion. Dkt. 206. On April 3, 2015, Liberty replied. Dkt. 230.

On March 12, 2015, Liberty also moved for summary judgment on Milgard's duty to provide prompt notice and duty to cooperate. Dkt. 166. On March 30, 2015, Milgard responded and moved to strike Liberty's motion. Dkt. 216. On April 3, 2015, Liberty replied. Dkt. 231.

On March 12, 2015, Milgard moved for summary judgment on its indemnification and bad faith claims. Dkt. 170. On March 30, 2015, Liberty responded and moved to strike portions of Milgard's motion. Dkt. 198. On April 3, 2015, Milgard replied. Dkt. 233.

On March 19, 2015, Milgard moved for sanctions. Dkt. 190. On March 30, 2015, Liberty responded. Dkt. 196. On April 3, 2014, Milgard replied. Dkt. 228.

## II. FACTUAL BACKGROUND

**A.   Parties**

Milgard is a window and door manufacturing company located in Tacoma, Washington. Dkt. 114, Declaration of Ray Faccenda ("Faccenda Dec.") ¶ 2. Liberty is an insurance company with its principal place of business in Boston, Massachusetts. Comp. ¶ 2. Liberty issues excess liability policies and administers claims made under such policies. *Id.*

**B.   Illinois Policy**

In 2001, Milgard obtained a general liability policy from Illinois Union Insurance Company ("Illinois Policy"). Dkt. 146, Declaration of Ray Cox ("Cox Dec."), Ex. 7 ("Illinois Policy"). The Illinois Policy had a term of December 31, 2001 to December 31, 2002, and a self-insured retention ("SIR") limit of $50,000 per claim. *Id.*

The Illinois Policy provides coverage if: (1) "[the] property damage is caused by an occurrence that takes place in the coverage territory;" (2) "[the] property damage is caused by an occurrence which takes place during the policy period; and" (3) "the onset of . . . property damage . . . take[s] place during the policy period." *Id.* § I.A.1.b. The Illinois Policy also includes a "deemer" clause, which provides as follows:

> All property damage or bodily injury caused by or related to an occurrence is deemed to take place when the damage or injury first becomes known to anyone, regardless of whether the damage or injury is continuous, progressive, repeated, changing or results from exposure to substantially the same general harm.

*Id.* § I.A.1.c.

## C. Liberty Policy

In 2001, Milgard obtained an excess liability policy from Liberty ("Liberty Policy"). Cox Dec., Ex. 1 ("Liberty Policy"). The Liberty Policy covers the same period as the Illinois Policy: December 31, 2001 to December 31, 2002. *Id.* The Liberty Policy contains the following coverage provision:

> We will pay on behalf of the Insured "loss" that results from an occurrence during the "policy period." We will pay "loss" in excess of the [Illinois Policy], but only up to an amount not exceeding our Limits of Liability as shown in Item 4. of the Declarations. Except for any definitions, terms, conditions and exclusions of this policy, the coverage provided by this policy is subject to the terms and conditions of the [Illinois Policy], as shown in Item 5. of the Declarations.

*Id.* § I. The Liberty Policy defines "loss" as "those sums you are legally obligated to pay as damages, after making proper deductions for all recoveries and salvage, which damages are covered by the [Illinois Policy]." *Id.* § IV.

The Liberty Policy also includes a notice provision, which provides, in relevant part, as follows:

> You must see to it that we are notified as soon as practicable of an occurrence which may result in a "loss" covered under this policy. . . . You and any other involved Insured must . . . authorize us to obtain records and other information; [and] cooperate with us in the investigation or settlement of the claim or defense of the claim or suit . . . .

*Id.* § V.E.

## D. Underlying Claims

On June 19, 2012, Milgard fully exhausted the Illinois Policy. Comp. ¶ 7. Following exhaustion of the Illinois Policy, Milgard tendered nineteen construction defect claims to Liberty ("underlying claims"). *Id.* ¶ 8. The plaintiffs in these underlying

1  claims allege that Milgard windows and doors leaked or otherwise failed and caused

2  property damage.  *Id.*  In September 2013, Milgard informed Liberty that nine of the

3  underlying claims had settled or were expected to settle, and thus no further action was

4  needed from Liberty at that time ("closed claims").  Cox Dec., Ex. 6.

5                                     **III. DISCUSSION**

6  **A.     Milgard's Motions to Strike and Motion for Sanctions**

7        Milgard moves to strike Liberty's pending summary judgment motions (Dkts. 145,

8  164, 166), arguing that Liberty filed these motions in violation of Local Rule 7(e)(3).

9  Dkts. 206, 216.  Milgard also asks the Court to sanction Liberty for its conduct by

10 awarding Milgard its fees and costs in responding to Liberty's summary judgment

11 motions.  Dkt. 190 at 2.

12       Under Local Rule 7(e)(3), motions for summary judgment must not exceed

13 twenty-four pages.  Local Rules, W.D. Wash. LCR 7(e)(3).  Local Rule 7(e)(3) prohibits

14 parties from filing contemporaneous dispositive motions, each one directed toward a

15 discrete issue or claim, absent leave of the Court.  *Id.*  Violations of the Local Rules may

16 result in sanctions.  Local Rules, W.D. Wash. LCR 11(c).

17       Liberty has filed four motions for summary judgment in this case.  Liberty first

18 moved for summary judgment in October 2014.  Dkt. 94.  Liberty withdrew this motion

19 after Milgard responded.  Dkt. 134.  In February and March 2015, Liberty filed three

20 successive motions for summary judgment, all of which address discrete issues.  Dkts.

21 145, 164, 166.  Liberty did not seek leave of the Court to file multiple summary judgment

22 motions.  Moreover, one of Liberty's pending summary judgment motions addresses the

same issues raised in Liberty's first summary judgment motion. *Compare* Dkt. 94, *with* Dkt. 145. Liberty's pending summary judgment motions total well over twenty-four substantive pages.

Although Liberty's pending summary judgment motions violate Local Rule 7(e)(3), the Court will consider the merits of Liberty's motions to avoid wasting judicial resources and to address the issues of law before trial. The Court therefore denies Milgard's motions to strike (Dkts. 206, 216). Nevertheless, Liberty could have sought leave of the Court to file an additional or overlength motion, but did not do so. The Court finds that sanctions are appropriate in order to encourage parties to follow the Local Rules. It is difficult to know what unnecessary legal expenses Milgard incurred in responding to Liberty's pending summary judgment motions, as well as the expenses Milgard incurred in briefing its motion for sanctions. Further briefing, however, would only lead to additional legal expenses. Therefore, the Court will award Milgard sanctions in the amount of $1500, which represents a reasonable estimate of Milgard's expenses.

**B.     Liberty's Motions for Summary Judgment**

Liberty moves for summary judgment on the following issues: (1) Milgard's duty to provide prompt notice and duty to cooperate (Dkt. 166); (2) Liberty's duty to indemnify Milgard (Dkt. 145); (3) Milgard's closed claims (Dkt. 164); (4) Milgard's underlying claims that do not exceed the SIR limit (Dkt. 164); and (5) Liberty's claims-handling conduct after Milgard filed its complaint (Dkt. 164). The Court will address each of these issues in turn.

### 1. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The

nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**2. Milgard's Duty to Provide Notice and Duty to Cooperate**

Liberty argues that Milgard waived coverage for one of its underlying claims—*Irvine v. Segue*—because Milgard failed to provide timely notice and failed to cooperate with Liberty. Dkt. 166. The *Irvine v. Segue* claim involves alleged construction defects at two adjacent apartment complexes in California: Pines B-1 and Pines B-2. Dkt. 218, Declaration of Stephen Welch ("Welch Dec.") ¶ 2. The facts and allegations regarding Pines B-1 are virtually identical to the facts and allegations regarding Pines B-2. *Id.* ¶ 10. Liberty's motion only relates to Pines B-1. *See* Dkt. 166.

Liberty bases its argument on the following provision in the Liberty Policy:

> You must see to it that we are notified as soon as practicable of an occurrence which may result in a "loss" covered under this policy. . . . You and any other involved Insured must . . . authorize us to obtain records and other information; [and] cooperate with us in the investigation or settlement of the claim or defense of the claim or suit . . . .

Liberty Policy § V.E. In response, Milgard contends that Liberty has failed to show that it suffered actual prejudice as required by Washington law. Dkt. 216.

Under Washington law, an insured that breaches a notice or cooperation clause may be contractually barred from bringing suit under the policy. *Staples v. Allstate Ins. Co.*, 176 Wn.2d 404, 410 (2013). The insurer bears the burden of proving

1  noncooperation. *Id.* To prevail on this affirmative defense, an insurer must establish

2  three elements: (1) the insured failed to substantially comply with the terms of the

3  cooperation clause; (2) the information at issue was material to the circumstances giving

4  rise to the insurer's liability; and (3) the insurer suffered actual prejudice as a result. *Id.*

5  at 413–19.

6        Here, the Court need not address the first two elements because even assuming

7  Milgard failed to substantially comply with the Liberty Policy provisions, Liberty has

8  failed to show that it suffered actual prejudice as a matter of law. Actual prejudice

9  requires "affirmative proof of an advantage lost or disadvantage suffered as a result of the

10 breach, which has an identifiable detrimental effect on the insurer's ability to evaluate or

11 present its defenses to coverage or liability." *Tran v. State Farm Fire & Cas. Co.*, 136

12 Wn.2d 214, 228–29 (1998). "If the insurer claims that it was deprived of the ability to

13 investigate, it must show that the kind of evidence that was lost would have been material

14 to its defense." *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 430 (2008).

15 "Prejudice is an issue of fact that will seldom be established as a matter of law." *Staples*,

16 176 Wn.2d at 419. Thus, "[p]rejudice will be presumed only in 'extreme cases.'" *Id.*

17       Liberty claims that it suffered prejudice because it lost the opportunity to

18 investigate the Pines B-1 parcel before remediation. Dkt. 166 at 18. Liberty, however,

19 has not presented evidence showing how Milgard's actions specifically deprived Liberty

20 of the ability to put forth defenses to coverage. In the absence of such evidence, the

21 Court cannot conclude that Liberty suffered actual prejudice as a matter of law. *See Mut.*

22

*of Enumclaw*, 164 Wn.2d at 431; *Canron, Inc. v. Federal Ins. Co.*, 82 Wn. App. 480, 491–92 (1996).

Moreover, the evidence in the record demonstrates that Liberty had access to adequate contemporaneous records for Pines B-1. Milgard provided Liberty with extensive information on the *Irvine v. Segue* claim. *See* Dkt. 219, Declaration of Matthew Segal ("Segal Dec."), Exs. 15, 16, 18. This information included photographic documentation of remediation work at Pines B-1, plaintiff's expert report, plaintiff's preliminary statement of claims, defense counsel costs, estimated settlement amount, and the identities of Milgard's retained experts. Segal Dec., Exs. 15, 16, 18. Based on this information, Liberty was arguably able to identify product defects and resulting damage at Pines B-1. *See* Segal Dec., Ex. 16 at 3; Ex. 18 at 13; Ex. 53. Milgard also notified Liberty that it could inspect Pines B-2. Segal Dec., Ex. 15. The defects and damage at Pines B-2 were illustrative of the damage observed at Pines B-1. Welch Dec. ¶ 10. Indeed, Liberty acknowledged that "[a]ttendance at a Parcel B-2 inspection . . . will give us the opportunity to identify potential mechanisms of product failure, if any, that may cause secondary damage." Dkt. 118, Declaration of Matthew Segal, Ex. 60 at 3. Based on this evidence, any inability to investigate Pines B-1 was not prejudicial as a matter of law because Liberty had access to other adequate records. *See Canron*, 82 Wn. App. at 491–92.

For these reasons, the Court denies Liberty's motion for summary judgment on Milgard's duty to provide notice and duty to cooperate (Dkt. 166).

### 3. Liberty's Duty to Indemnify

Next, Liberty argues that Milgard has failed to establish that its losses fall within the terms of the Liberty Policy, and thus Liberty does not have a duty to indemnify Milgard. Dkt. 145 at 17. Liberty also requests that the Court issue a declaratory judgment that Liberty has no duty to indemnify Milgard for the underlying claims. *Id.* at 20.

#### a. Insurance Policy Interpretation

To determine whether Liberty has a duty to indemnify Milgard, the Court must review and interpret the Liberty Policy. In Washington, the interpretation of insurance policies is a question of law. *Am. Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874 (1993), *opinion supplemented by* 123 Wn.2d 131 (1994). Washington courts construe insurance policies as a whole, giving force and effect to each clause in the policy. *Id.* If the policy language is clear and unambiguous, the Court will not modify the policy or create an ambiguity. *Id.* If the policy language is fairly susceptible to two different reasonable interpretations, it is ambiguous, and the Court may attempt to discern the parties' intent by examining extrinsic evidence. *Id.* If the policy remains ambiguous after resort to extrinsic evidence, the Court construes the ambiguities against the insurer. *Id.* at 874–75.

#### b. Liberty Policy

The parties dispute whether the Liberty Policy incorporates the terms and conditions of the Illinois Policy. Liberty argues that the Liberty policy is a "follow form" policy that incorporates the Illinois Policy's coverage terms. Dkt. 145 at 16–17. Milgard

1 disagrees, arguing that the Liberty Policy relies exclusively on its own provisions to grant

2 and limit coverage.  Dkt. 148 at 10–11.

3       The Liberty Policy is an excess insurance policy.  Liberty Policy §§ I, II.B.1.  An

4 excess insurance policy may be classified as either a "stand alone" policy or a "follow

5 form" policy.  *Newmont USA Ltd. v. Am. Home Assur. Co.*, 795 F. Supp. 2d 1150, 1168

6 (E.D. Wash. 2011).  "A stand-alone excess policy relies exclusively on its own insuring

7 agreement, conditions, definitions, and exclusions to grant and limit coverage."  *Id.*

8 (quoting Douglas R. Richmond, *Rights and Responsibilities of Excess Insurers*, 78 Dev.

9 U. L. Rev. 29, 29–31 (2000)).  Meanwhile, a "follow form" policy "incorporates by

10 reference the terms, conditions, and exclusions of the underlying policy."  *Id.*  "An excess

11 policy that follows form is designed to match the coverage provided by the underlying

12 policy, although some following form policies contain exclusions beyond those found in

13 the primary policy, and policy provisions sometimes conflict."  *Id.*; *see also Certain*

14 *Underwriters at Lloyd's London v. Travelers Prop. Cas. Co. of Am.*, 161 Wn. App. 265,

15 n.3 (2011) ("A 'follow form' policy is an excess policy that insures the same risks as, but

16 in excess to, the coverage provided by a lower level policy.").  "Typically a 'follows

17 form' policy will contain[] a clear express clause such as 'Except as otherwise provided

18 in this policy, this policy shall follow all the terms, conditions, definitions and exclusions

19 of the controlling underlying policies.'"  *Newmont*, 795 F. Supp. 2d at 1168.

20       Here, the Court finds that the Liberty Policy "follows form" to the Illinois Policy.

21 The Liberty Policy specifically provides: "Except for any definitions, terms, conditions

22 and exclusions of this policy, coverage and exclusions of this policy, the coverage

provided by this policy is subject to the terms and conditions of the [Illinois Policy]." Liberty Policy § I. The Liberty Policy further states that "if all such coverage [provided by the Illinois Policy] is exhausted, [this policy] will apply as underlying insurance subject to the same terms, conditions, definitions and exclusions of the [Illinois Policy], except for any definitions, terms, conditions and exclusions of this policy." *Id.* § II.B.4. Based on this plain language, the Liberty Policy expressly incorporates the terms and conditions of the Illinois Policy to the extent that those provisions do not conflict with provisions in the Liberty Policy.

Milgard contends that the Liberty Policy does not incorporate the Illinois Policy's coverage provisions, because the Liberty Policy contains its own coverage provision. Dkt. 148 at 10–11. The Liberty Policy's coverage provision provides, in part, as follows: "[Liberty] will pay on behalf of the Insured 'loss' that results from an occurrence during the 'policy period.'" Liberty Policy § I. According to Milgard, this provision is a complete and express policy term that does not incorporate the Illinois Policy's coverage language. Dkt. 148 at 11.

The Liberty Policy, however, must be viewed in its entirety. *Ibrahim v. AIU Ins. Co.*, 177 Wn. App. 504, 515 (2013). The Liberty Policy goes on to define "loss" as "those sums which you are legally obligated to pay as damages, after making proper deductions for all recoveries and salvage, *which damages are covered by the* [*Illinois Policy*]." Liberty Policy § IV (emphasis added). This language plainly establishes that the Liberty Policy is designed to provide the same coverage as provided by the Illinois

Policy. Accordingly, the Liberty Policy incorporates the Illinois Policy's coverage provisions.

### c. Coverage Terms

The Illinois Policy provides coverage if: (1) "[the] property damage is caused by an occurrence that takes place in the coverage territory;" (2) "[the] property damage is caused by an occurrence which takes place during the policy period; and" (3) "the onset of . . . property damage . . . take[s] place during the policy period." Illinois Policy § I.A.1.b. The Illinois Policy's deemer clause further provides that "all property damage . . . caused by or related to an occurrence is deemed to take place when the damage . . . first becomes known to anyone . . . ." *Id.* § I.A.1.c.

Based on these requirements, three events must take place during the policy period for coverage to be triggered: (1) an occurrence; (2) the onset of property damage; and (3) first knowledge of the property damage. *See id.* §§ I.A.1.b, c. The Illinois Policy defines the terms "occurrence" and "property damage." "Occurrence means an accident, including continuous or repeated exposure to substantially the same general harm." *Id.* § V.15. "Property damage means physical injury to tangible property, including all resulting loss of use of that property." *Id.* § V.19.

### d. Existence of Coverage

As the insured, Milgard bears the burden of showing its loss falls within the policy terms. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731 (1992). Liberty contends that Milgard has failed to establish both the onset of property damage during the

policy period and first knowledge of property damage during the policy period. Dkt. 145 at 17.

Milgard offers evidence that property damage more likely than not occurred during the Liberty Policy period. *See, e.g.*, Dkt. 150, Declaration of Robert Bombino, Ex. A at 2 ("[I]n all of the seven case files we reviewed, there is sufficient evidence to suggest that a portion of the reported defects were present in 2002. Further, in all cases there is a reasonable likelihood that the defects resulted in secondary property damage in 2002."); *id.* at 23 ("A portion of the reported window and door defects are a result of product defects that more probably than not would have existed at the time of project completion. . . . Water leakage and damage would have more likely than not begun to manifest immediately or at least as soon as the first significant rain after installation."). Although this evidence is not conclusive, it is sufficient to satisfy Milgard's burden on summary judgment. *See Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630.

Milgard, however, does not offer any evidence establishing that someone first noticed damage during the policy period. Milgard has therefore failed to show the existence of coverage under the Liberty Policy. The Court grants Liberty's motion for summary judgment on Milgard's indemnification claims and on Liberty's claim for declaratory judgment (Dkt. 145).

    **4.**    **Milgard's Closed Claims**

Liberty moves for partial summary judgment on Milgard's closed claims, arguing that the closed claims do not provide a factual or legal basis for Milgard's bad faith

1 claims. Dkt. 164 at 11–16.  Liberty's argument is unavailing.  While Milgard does not

2 seek coverage for the closed claims, Liberty's handling of those claims prior to closure

3 may provide grounds for recovery of bad faith damages.  *See St. Paul Fire & Marine Ins.*

4 *Co. v. Onvia, Inc.*, 165 Wn.2d 122, 131–32 (2008) ("[A]lthough . . . the benefit of the

5 insurance contract (i.e., defense, settlement, and payment) is not available to the insured,

6 if [the insured] handled the claim in bad faith, a cause of action based on this conduct

7 remains available to the insured.").  The Court denies Liberty's motion for partial

8 summary judgment (Dkt. 164) on this issue.

9      **5.**      **Milgard's Underlying Claims That Do Not Exceed the SIR Limit**

10      Additionally, Liberty contends that Milgard is not entitled to coverage for any

11 underlying claim that does not exceed the SIR limit.  Dkt. 164 at 16–20.  As discussed

12 above, Milgard has failed to show the existence of coverage under the Liberty Policy, and

13 thus the Court need not address whether Milgard is entitled to coverage for underlying

14 claims that do not exceed the SIR limit.  The Court denies as moot Liberty's motion for

15 partial summary judgment (Dkt. 164) on this issue.

16      **6.**      **Liberty's Claims-Handling Conduct During Litigation**

17      Finally, Liberty argues that it is not liable under Washington claims-handling

18 statutes and regulations for claims-handling conduct that occurred after Milgard filed its

19 complaint.  Dkt. 164 at 20–24.  As explained in greater detail below, even if Liberty

20 failed to comply with a regulation that applies to claims-handling conduct instead of

21 litigation conduct, Milgard has failed to present evidence of harm.  The Court therefore

22 denies as moot Liberty's motion for partial summary judgment (Dkt. 164) on this issue.

C.  **Milgard's Motion for Summary Judgment**

Milgard moves for summary judgment on its indemnification and bad faith claims.[1] Dkt. 170. The Court denies Milgard's motion as to its indemnification claims for the reasons discussed above. The Court will proceed to address Milgard's bad faith and CPA claims.

In Washington, an insurer has a duty of good faith to its policyholder. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484 (2003). "An action for bad faith handling of an insurance claim sounds in tort." *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389 (1992). "Claims of insurer bad faith are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *Mut. of Enumclaw*, 161 Wn.2d at 916 (internal quotation marks omitted). To prove that the insurer acted in bad faith, the insured must show that the insurer's breach was "unreasonable, frivolous, or unfounded." *Id.* A Washington CPA claim requires a showing of (1) an unfair or deceptive practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his or her business or property, and (5) which injury is linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784–85 (1986).

---

[1] Liberty asks the Court to strike Appendix A, Exhibit 5, and all footnotes from Milgard's motion. Dkt. 198 at 3–5. Liberty argues that these portions of Milgard's motion violate Local Rule 7(e)(3), which limits motions for summary judgment to twenty-four pages. *Id.* Appendix A and Exhibit 5 contain factual citations and quotations from the record. Moreover, Milgard's footnotes consist mostly of citations. The Court therefore denies Liberty's motion to strike (Dkt. 198).

1    "The Insurance Commissioner has promulgated regulations that define specific
2 acts and practices that constitute a breach of an insurer's duty of good faith." *Am. Mfrs.*
3 *Mut. Ins. Co. v. Osborn*, 104 Wn. App. 686, 697 (2001) (citing RCW 48.30.010; WAC
4 284-30-300 to -800). A breach of these regulations also constitutes a per se unfair trade
5 practice violation under the CPA. *Id.*
6    Milgard asserts that Liberty violated a number of WAC regulations and that such
7 violations constitute bad faith. Dkt. 170 at 14–23. Even assuming that Liberty violated
8 these regulations, Milgard has failed to establish that it was harmed by Liberty's actions.
9 "Harm to the insured is an essential element of every bad faith or CPA claim." *Werlinger*
10 *v. Clarendon Nat. Ins. Co.*, 128 Wn. App. 804, 808 (2005); *see also Van Noy v. State*
11 *Farm Mut. Auto. Ins. Co.*, 98 Wn. App. 487 (1999) ("Without proving harm, there is no
12 violation of the CPA or bad faith claim."). Milgard asserts that it was prejudiced by
13 Liberty's actions. Dkt. 170 at 22. For example, Milgard claims that Liberty inserted
14 itself into active ligation over Milgard's objections, failed to split Milgard's file between
15 claims adjusting and coverage counsel, and had inappropriate contact with the parties in
16 the underlying claims. Dkt. 208 at 21. Milgard, however, does not point to specific
17 evidence of harm resulting from Liberty's actions. "[B]ecause harm is an essential
18 element, summary judgment in favor of the insure[r] is appropriate if a reasonable person
19 could only conclude that the insured suffered no harm." *Werlinger*, 128 Wn. App. at 808.

Accordingly, the Court denies Milgard's motion for summary judgment with respect to its bad faith and CPA claims.[2]

## IV. ORDER

Therefore, it is hereby **ORDERED** that Milgard's motions to strike (Dkts. 206, 216) are **DENIED**. Milgard's motion for sanctions (Dkt. 190) is **GRANTED** as stated herein. Liberty's motion for summary judgment on Milgard's duty to provide notice and duty to cooperate (Dkt. 166) is **DENIED**. Liberty's motion for summary judgment on Milgard's indemnification claims and for declaratory judgment (Dkt. 145) is **GRANTED**. Liberty's partial motion for summary judgment on Milgard's closed claims, Milgard's underlying claims that do not exceed the SIR limit, and Liberty's claims-handling conduct during litigation (Dkt. 164) is **DENIED**. Milgard's motion for summary judgment on its indemnification and bad faith claims (Dkt. 170) is **DENIED**. Liberty's motion to strike (Dkt. 198) is **DENIED**.

Dated this 27th day of May, 2015.

BENJAMIN H. SETTLE
United States District Judge

---

[2] Because the Court denies Milgard's motion as to its bad faith and CPA claims, the Court need not address Milgard's request for exemplary damages under the IFCA. *See* Dkt. 170 at 24.