1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MILGARD MANUFACTURING, INC., a
Washington corporation,

     Plaintiff,

  v.

LIBERTY MUTUAL INSURANCE
COMPANY, a Massachusetts mutual
insurance company,

     Defendant.

CASE NO. C13-6024 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFF'S MOTION FOR
RECONSIDERATION AND
PARTIALLY VACATING AND
AMENDING PREVIOUS ORDER

   This matter comes before the Court on Plaintiff Milgard Manufacturing, Inc.'s

("Milgard") motion for reconsideration (Dkt. 267).  The Court has considered the

pleadings filed in support of and in opposition to the motion and the remainder of the file

and hereby rules as follows:

## I. PROCEDURAL HISTORY

   On November 12, 2013, Milgard filed suit against Defendant Liberty Mutual

Insurance Company ("Liberty") in Pierce County Superior Court.  Dkt. 1.  On November

ORDER - 1

1   27, 2013, Liberty removed the matter to this Court.  *Id.*  Milgard alleges that Liberty (1)

2   breached its duty to indemnify Milgard, (2) acted in bad faith, and (3) violated the

3   Washington Consumer Protection Act ("CPA") and Insurance Fair Conduct Act

4   ("IFCA").  Dkt. 24 ¶¶ 12–30.

5          On May 27, 2015, the Court ruled on the parties' motions for summary judgment.

6   Dkt. 265.  Relevant to the instant motion, the Court determined that Milgard failed to

7   show the existence of coverage under the Liberty Policy because Milgard did not offer

8   evidence establishing first knowledge of property damage during the policy period.  *Id.* at

9   15.

10         On June 10, 2015, Milgard moved for reconsideration of the Court's coverage

11  ruling.  Dkt. 267.  On June 15, 2015, the Court requested a response from Liberty and set

12  a briefing schedule.  Dkt. 269.  On June 30, 2015, Liberty responded.  Dkt. 275.  On July

13  6, 2015, Milgard replied.  Dkt. 278.

14                                  **II. DISCUSSION**

15         Milgard asks the Court to reconsider its previous order on four grounds: (1) new

16  evidence indicates that Liberty did not intend the deemer clause to require first

17  knowledge of property damage during the policy period; (2) Milgard submitted evidence

18  of first knowledge of property damage as to the underlying *Providence* claim; (3)

19  Milgard raised questions of fact regarding estoppel as to the underlying *UC Irvine*,

20  *Lavongsar*, and *Irvine v. Segue* claims; and (4) the underlying *Gonzalez*, *Irvine Apts.*, and

21

22

1  *Tuscany Hills* claims should be dismissed without prejudice because they remain active.[1]

2  Dkt. 267 at 3–6.  The Court will address each issue in turn.

3  **A.      Legal Standard**

4          Motions for reconsideration are governed by Local Rule 7(h), which provides:

5              Motions for reconsideration are disfavored.  The court will
ordinarily deny such motions in the absence of a showing of manifest error
6          in the prior ruling or a showing of new facts or legal authority which could
not have been brought to its attention earlier with reasonable diligence.

7  Local Rules, W.D. Wash. LCR 7(h)(1).  Reconsideration should "be used sparingly in the

8  interests of finality and conservation of judicial resources."  *Kona Enters., Inc. v. Estate

9  *of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).  "Whether or not to grant reconsideration is

10 committed to the sound discretion of the court."  *Navajo Nation v. Confederated Tribes &

11 *Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

12 **B.      Deemer Clause Evidence**

13         Milgard first argues that new evidence warrants reconsideration of the Court's

14 ruling that the Liberty Policy requires first knowledge of property damage during the

15 policy period.  Dkt. 267 at 4.  The Court disagrees.  The Liberty Policy unambiguously

16 incorporates the Illinois Policy's coverage provisions.  *See* Dkt. 146, Declaration of Ray

17 Cox ("Cox Dec."), Ex. 1 §§ I, II.B.4, IV.  The Illinois Policy, in turn, plainly provides

18 that there must be first knowledge of property damage within the policy period in order

19 for coverage to be triggered.  *See* Cox Dec., Ex. 7 § I.A.1.c.  Because the policy language

20 ─────────────────

21         [1] Milgard also seeks clarification as to the Court's ruling on Milgard's bad faith claims.
Dkt. 267 at 7.  The Court provided clarification in its order requesting additional briefing.  *See*
22 Dkt. 269.

1    at issue is clear and unambiguous, the Court need not consider extrinsic evidence of the

2    parties' intent. *Am. Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874 (1993), *opinion*

3    *supplemented by* 123 Wn.2d 131 (1994).  The Court denies Milgard's motion on this

4    issue.

5    **C.    *Providence* Claim**

6           Next, Milgard contends that the Court should reconsider its coverage ruling with

7    regard to the underlying *Providence* claim because Milgard submitted evidence of first

8    knowledge of property damage during the policy period.  Dkt. 267 at 3.  In response to

9    Liberty's first summary judgment motion,[2] Milgard provided a service request that was

10   produced in the underlying *Providence* litigation.  Dkt. 130, Declaration of Matthew

11   Segal ("Segal Dec."), Ex. 78.  The service request includes homeowners Luis and Gauri

12   Reyes' report of "moisture on drywall [at] the corner of the windows" and "water stains"

13   in their unit, which is part of the *Providence* development.  *Id.* at 8–9.  The homeowners

14   reported these issues on December 27, 2002.  *Id.* at 8.  The Liberty Policy had a term of

15   December 31, 2001 to December 31, 2002.  Cox Dec., Ex. 1 at 2.  Milgard referenced this

16   evidence in a footnote in its response to Liberty's second summary judgment motion.

17   *See* Dkt. 148 at 20 n.22 ("Liberty has also been provided direct evidence of first notice of

18   property damage in the Policy period in at least one claim.  Dkt. No. 130-1.").

19          Liberty disputes the admissibility of this evidence.  First, Liberty argues that

20   Milgard has made no effort to authenticate the service request in this case.  Dkt. 275 at 7.

21

22          [2] Liberty subsequently withdrew this motion.  Dkt. 134.

ORDER - 4

1  Second, Liberty contends that the service request contains inadmissible hearsay to which

2  no exception applies.  *Id.*

3      The Court "can only consider admissible evidence in ruling on a motion for

4  summary judgment."  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

5  With regard to Liberty's authenticity argument, evidence must be authenticated to be

6  admissible.  *Id.*  Documents produced by a party in discovery are deemed authentic when

7  offered by the party-opponent.  *See id.* at 777; *Maljack Prods., Inc. v. GoodTimes Home*

8  *Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996).  Liberty produced the service request

9  during discovery in this case.  *See* Dkt. 118, Declaration of Matthew Segal ¶ 83, Ex. 78.

10 The service request has therefore been authenticated by production.  As to Liberty's

11 hearsay argument, out-of-court statements are not hearsay when offered to prove

12 knowledge or notice.  *See Stevens v. Moore Bus. Forms, Inc.*, 18 F3d 1443, 1449 (9th Cir.

13 1994); *Kunz v. Utah Power & Light Co.*, 913 F.2d 599, 605 (9th Cir. 1990); Fed. R. Evid.

14 801(c).  Milgard submitted the service request to demonstrate first knowledge of property

15 damage during the policy period.  *See* Dkt. 148 at 20 n.22.  The service request is

16 therefore admissible.

17      Liberty also contends that Milgard did not argue that the service request created an

18 issue of material fact in its response to Liberty's summary judgment motion.  Dkt. 275 at

19 7.  While Milgard could have brought more attention to this evidence initially, the Court

20 agrees with Milgard that the service request raises a material question of fact as to first

21 knowledge of property damage in the underlying *Providence* claim.  As noted above, the

22 service request includes a report of "moisture on drywall [at] the corner of the windows"

1   and "water stains" in a unit within the *Providence* development.  Segal Dec., Ex. 78 at 8–

2   9.  The report is consistent with the property damage that "more likely than not" occurred

3   during the Liberty Policy period.  *See* Dkt. 150, Declaration of Robert Bombino, Ex. A

4   at 23.  The report was also made on December 27, 2002, which falls within the Liberty

5   Policy period.  Segal Dec., Ex. 78 at 8; Cox Dec., Ex. 1 at 2.  Accordingly, the Court

6   grants Milgard's motion on this issue and vacates its prior coverage ruling with respect to

7   the *Providence* claim.

8   **D.    Estoppel**

9        Milgard also argues that it raised questions of fact regarding estoppel as to three

10  underlying claims—*UC Irvine*, *Lavongsar*, and *Irvine v. Segue*.[3]  Dkt. 267 at 5–6.  The

11  Court did not address estoppel in its previous order.  *See* Dkt. 265.

12       In the insurance context, estoppel "arises by operation of law, and rests upon acts,

13  statements or conduct on the part of the insurer or its agents which lead or induce the

14  insured, in justifiable reliance thereupon, to act or forbear to act to his prejudice."

15  *Buchanan v. Switzerland Gen. Ins. Co.*, 76 Wn.2d 100, 108 (1969).  Under Washington

16  law, "it is the general rule that if an insurer denies liability under the policy for one

17  reason, while having knowledge of other grounds for denying liability, it is estopped

18  from later raising the other grounds in an attempt to escape liability, provided that the

19  insured was prejudiced by the insurer's failure to initially raise the other grounds."  *Bosko*

20

21        [3] To the extent that Milgard argues the doctrine of waiver applies, Milgard only set forth
    the elements of and argued estoppel in its response to Liberty's second summary judgment
22  motion.  *See* Dkt. 148 at 20.  The Court therefore declines to consider the doctrine of wavier
    here.  *See 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

1 | *v. Pitts & Still, Inc.*, 75 Wn.2d 856, 864 (1969); *see also Vision One, LLC v. Philadelphia*

2 | *Indem. Ins. Co.*, 174 Wn.2d 501, 521 (2012) ("A provision must be asserted as a basis for

3 | denying coverage, and during litigation insurers may be precluded from asserting new

4 | grounds for denying coverage."). "As a general matter . . . estoppel claims implicate

5 | factual issues which are not appropriate for resolution on a motion for summary

6 | judgment." *Time Oil Co. v. Cigna Prop. & Cas. Ins. Co.*, 743 F. Supp. 1400, 1419 (W.D.

7 | Wash. 1990).

8 |      Milgard argues that Liberty should be estopped from relying on the deemer clause

9 | to deny coverage for the *UC Irvine*, *Lavongsar*, and *Irvine v. Segue* claims because

10 | Liberty did not invoke the deemer clause prior to the settlement of those claims.  Dkt. 267

11 | at 5–6.  Milgard contends that Liberty's failure to invoke the deemer clause prior to

12 | settlement deprived Milgard of the opportunity to pursue evidence of first knowledge.

13 | Dkt. 279 at 6–7.

14 |      To support its argument, Milgard presents evidence establishing that Liberty did

15 | not specifically rely on the deemer clause and request proof of first knowledge until after

16 | the *UC Irvine*, *Lavongsar*, and *Irvine v. Segue* claims had already settled.  *See* Segal

17 | Dec., Ex. 17 at 70–74, Exs. 51, 56, 62–64; Dkt. 280, Declaration of Matthew Segal, Ex.

18 | A ("Lyons Dep.") 143:15–144:15, 196:20–198:24, 199:3–201:10.  With regard to

19 | prejudice, Milgard offers the declaration of Joseph Aguilar ("Aguilar"), an attorney who

20 | represented Milgard in the underlying *Irvine v. Segue*, *Providence*, and *Tuscany Hills*

21 | claims.  Dkt. 282, Declaration of Joseph Aguilar ("Aguilar Dec.") ¶ 1.  Aguilar states that

22 | "neither Milgard nor the other parties regularly develop evidence relevant to when

1   alleged damage is first noticed or reported." *Id.* ¶ 2.  Aguilar further asserts that "had we

2   known that evidence of first notice would be raised by [Liberty] as an express defense to

3   coverage for these and other claims, we could have at least explored through discovery

4   (formal or informal) whether any evidence could provide this type of information." *Id.*

5        On the current record, the Court finds that there is a material issue of fact as to

6   whether Milgard was prejudiced by Liberty's late reliance on the deemer clause in the

7   *UC Irvine*, *Lavongsar*, and *Irvine v. Segue* claims.  Milgard has submitted evidence

8   indicating that it did not have the opportunity to pursue evidence of first knowledge in the

9   underlying litigation.  *See* Aguilar Dec. ¶ 2.  Although Aguilar represented Milgard in

10  only one of the underlying claims at issue—*Irvene v. Segue*—he nevertheless states that

11  Milgard does not regularly develop evidence of first knowledge in construction defect

12  actions.  *Id.*  Whether Milgard suffered actual prejudice under these circumstances is an

13  open question of fact that cannot be resolved at this time.  Accordingly, the Court amends

14  its previous order and denies Liberty's summary judgment motion (Dkt. 145) on the issue

15  of estoppel with respect to the *UC Irvine*, *Lavongsar*, and *Irvine v. Segue* claims.

16  **E.    Active Claims**

17       Finally, Milgard argues the Court should have dismissed three of Milgard's

18  underlying claims—*Gonzalez*, *Irvine Apts.*, and *Tuscany Hills*—without prejudice.  Dkt.

19  267 at 6; Dkt. 279 at 11.  Milgard contends that these claims remain active and thus

20  evidence of first knowledge of property damage during the policy period could come to

21  light in the future.  Dkt. 267 at 6.  Because discovery in these three underlying claims is

22  ongoing, the Court agrees that dismissal of these claims should be without prejudice.  The

1  Court grants Milgard's motion on this issue and vacates its previous dismissal of the

2  *Gonzalez*, *Irvine Apts.*, and *Tuscany Hills* claims.

### III. ORDER

4      Therefore, it is hereby **ORDERED** that Milgard's motion for reconsideration

5  (Dkt. 267) is **GRANTED in part** and **DENIED in part**.  The Court's previous order

6  (Dkt. 265) is **VACATED in part** and **AMENDED in part** as discussed herein.

7      Dated this 17th day of August, 2015.

8

9

      BENJAMIN H. SETTLE
10      United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 9